IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 26, 2008 Session

## STATE OF TENNESSEE v. SHANE KENT ROGERS

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S49480      R. Jerry Beck, Judge**

_____

**No. E2007-02239-CCA-R3-CD - Filed October 27, 2008**

_____

The Defendant, Shane Kent Rogers, pled guilty to one count of violating a motor vehicle habitual offender order, a Class E felony, and one count of vandalism over five-hundred dollars, also a Class E felony.  The trial court sentenced the Defendant as a multiple offender to two concurrent three-year sentences to be served in the Tennessee Department of Correction. On appeal, the Defendant claims that the trial court erred when it did not grant him alternative sentencing.  After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court
Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. McLIN, JJ., joined.

Joseph F. Harrison, Blountville, Tennessee, for the Appellant, Shane Kent Rogers.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; H. Greeley Wells, District Attorney General; James F. Goodwin, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts**

**A. Plea Hearing**

This case arises from the Defendant's arrest on April 3rd, 2004, for violating a habitual motor vehicle offender order and attempted burglary.  In 2003, the Defendant was declared a habitual motor vehicle offender (an "HMVO") pursuant to Tennessee Code Annotated § 55-10-616.  At the guilty plea hearing, the State described the proof it would have presented had the case gone to trial.  The

State explained that four officers of the Bristol, Tennessee, Police Department would have testified to the following:

> [After the officers responded to a "burglary in progress" call at the Dollar Tree Store in Sullivan County,] a witness stated they had seen a white male wearing a white t-shirt using a crowbar to try and pry open the back door of the Dollar Tree Store. . . .[and] that the suspect had left in a light blue vehicle.
>
> . . . .
>
> [After identifying a vehicle and driver that matched the witness's description,] Officer Vance stopped the vehicle in the parking lot of Taco Bell. He had the driver exit the vehicle. The driver was identified as the Defendant, Shane Kent Rogers . . . . and at that time Officer Privette said that he had seen a crowbar lying in plain view in the floorboard of the vehicle that Mr. Rogers was driving.
>
> Mr. Rogers did not have a driver's license, but gave Officer Vance a Tennessee identification card. . . . Officer Emery drove the witness by the site where Officer Vance and [the Defendant] had stopped, and the witness said that the Defendant was the person that he had seen trying to pry open the door to the Dollar Tree Store. There was damage done to the door of the establishment.

The State further stated that the proof at trial would indicate that the damage caused by the Defendant would amount to at least five-hundred dollars. Also, the State would have offered proof that the Defendant's number and kind of prior criminal convictions placed him within the Range II offender category. At the hearing, the Defendant pled guilty to one count of violating a habitual motor vehicle offender order and one count of vandalism over five-hundred dollars.

Subsequent to the plea hearing, but before the sentencing hearing, a Virginia court convicted the Defendant of driving under the influence in Virginia. The incident resulting in the Virginia D.U.I. conviction occurred prior to the Tennessee HMVO violation and vandalism in April 2004. The Defendant received a sentence of eighteen months of incarceration and three and one half years of probation for the Virginia conviction. In June 2007, the Defendant was released after serving fifteen months in Virginia, whereupon he returned to Tennessee.

**B. Sentencing Hearing**

At the sentencing hearing, the trial court heard testimony from the Defendant's sister and the Defendant, reviewed the presentence report, and read letters from several of the Defendant's employer and jail administrators.

The Defendant's sister, Debra Lynn Moretz, testified that she, having seen the Defendant "at the lowest," believed the Defendant now to be more responsible and to have changed his attitude toward drug use. Moretz stated that she would not testify on her brother's behalf if she did not

believe he had changed. Moretz testified that since the Defendant's June 2007 release from prison, he has resided with their mother and herself, displaying a more mature disposition by taking responsibility for their mother's care: "[H]e's grown up. He's taken responsibility. He's helping me with our mother. He's staying clean. I couldn't ask for a better brother." She explained that their mother's ill health required "around the clock" supervision. She warned that her employer likely would soon transfer her to Morristown, requiring her to leave their mother's house and move to Johnson City. The Defendant's care for their mother would, therefore, become more essential. Moretz assured the court that, were she to move, she would maintain contact with the Defendant, remaining available to him as a resource person.

The Defendant testified that at the time of the hearing he was thirty-three years old, divorced, and the father of two children for whom he paid $420.00 per month in child support. The Defendant stated that he began working for Sun Chemical Company on July 27, 2007, which was shortly after his June 2007 release. The Defendant introduced a letter confirming his employment with Sun Chemical Company and his good work record.

The Defendant recounted that he began to consume alcohol at age sixteen, and he considered himself to be a  recovering alcoholic. He stated that he has not consumed alcohol since his June 2007 release from prison. He further disclosed that he used marijuana between the ages of fourteen and twenty-four, and cocaine and methamphetamines in his late twenties. The Defendant attributed his drug abuse to relationship tension with his girlfriend and a high workload. However, the Defendant testified that he had not abused these substances since April 2004 and had passed each drug screen administered by his current employer.

The Defendant confirmed Moretz's account of their mother's condition, explaining that their mother suffered from Alzheimer's, diverticulitis, and a bad heart condition. He explained that she has limited mobility and requires assistance to transport, bathe, and feed herself. The Defendant stated that his sister's departure would leave only him to care for their mother.

The Defendant testified that at the time of the sentencing hearing he was serving a suspended sentence for a conviction in Virginia for driving under the influence. He introduced a letter from C.W. Martin of the Virginia Department of Corrections attesting that while confined, the Defendant incurred no disciplinary infractions and completed a computer literacy program. He introduced a letter from Jason McMurry, the officer supervising his Virginia-ordered suspended sentence, attesting that the Defendant had complied with the probation conditions up to the time of trial. The Defendant introduced a letter from Jimmy Harrison, Jail Administrator of Lauderdale County, Tennessee, stating that during the Defendant's confinement in Lauderdale County he was a "trusty" inmate and passed each drug screen. The Defendant concluded by stating that he regretted his conduct because it had done "nothing but hurt [his] family, [his] kids, and their mothers." On cross-examination, the Defendant admitted that he had received twelve distinct suspended sentences and that the State had filed probation violation reports against him at least six times.

The State introduced and relied solely on the presentence report. According to the report, the Defendant dropped out of high school in the tenth grade but received a G.E.D. two years later.

3

Also, in 2003, the Defendant earned a certified nursing assistant license and later renewed the license while incarcerated. The report reveals that the Defendant's mother stated in an interview with the probation officer that the Defendant's father physically abused him until the father was shot to death when the Defendant was ten years old. According to the report, his mother stated that the Defendant's problems seemed to begin after his father's death and that she "felt very strongly that the Defendant needed psychiatric help."

The report also revealed that the Defendant had spent three of the past three and a half years in confinement for offenses committed in Tennessee and Virginia. The report also contained a lengthy list of the Defendant's past criminal charges. The parties stipulated to the fact that the report contained a few redundancies. However, without taking account of the redundancies, the report suggests that the Defendant has been charged with at least thirty-five offenses, a number the trial court called "overwhelming."

After reviewing the evidence presented, the trial court denied the Defendant's motion for alternative sentencing. After expressing hesitancy to impose confinement on a man with a present intent to change his life despite a troubled childhood, the court explained that the looming presence of the Defendant's extraordinary criminal record required strict measures. The court then ordered the Defendant to serve his effective three year sentence in confinement, with credit for time already served.

## II. Analysis

The Defendant contends that the trial court improperly denied alternative sentencing because the Defendant had shown himself open to rehabilitation, the Defendant had not recently failed to comply with measures less restrictive than confinement, and the State did not present evidence of a heightened need to deter acts like those of the Defendant. The State answers that the trial court properly balanced the potential for rehabilitation, the need to deter like acts, and the likelihood that the Defendant would respond well to measures less than incarceration. We agree with the State.

When a defendant appeals the manner of service of a sentence imposed by a trial court, this court conducts a *de novo* review of the record with a presumption of correctness as to the trial court's determination. T.C.A. § 40-35-401(d) (2005). However, this presumption of correctness arises only if the record affirmatively shows that the trial judge considered both the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party carries the burden of showing the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. Even if we prefer a different result, we may not disturb the sentence if the trial court followed the statutory sentencing procedure, made findings of fact adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Tennessee Supreme Court noted recently that, due to the 2005 sentencing amendments, no defendant is *presumed* to be a favorable candidate for alternative sentencing. *State v. Carter*, 254

4

S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, 'should be considered' as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512.

When determining whether to impose a sentence of confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2008). Also, the trial court may consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

In conducting *de novo* review of a sentencing determination, we must consider (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any mitigating or statutory enhancement factors; (6) any statement that the defendant made on his own behalf; and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-102, -103, -210 (2007); *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991).

In the case under submission, the Defendant cannot avail himself of the Code's language granting standard and especially mitigated offenders "favorable consideration" for alternative sentences, because the Defendant is a Range II offender. T.C.A. § 40-35-102(6). Therefore, the trial court had no responsibility to give the Defendant favorable consideration. As long as the trial court considered the sentencing principles and relevant facts and circumstances in sentencing the Defendant, the trial court's determination is presumptively correct. *Fletcher*, 805 S.W.2d at 789.

When sentencing the Defendant, the trial court considered the Defendant's likeliness to re-offend and the Defendant's rehabilitative potential. The presentence report revealed that the Defendant had been convicted of at least twenty-nine offenses, including driving under the influence, driving with a suspended license, violation of habitual motor vehicle offender order, possession and

distribution of intoxicating liquor by a person under the age of twenty-one, burglary, theft, interfering with the property rights of another, and eluding police. The trial court stated:

> He–he has bright spots. And I mean that by favorable factor [sic]. He has obtained a GED. It's set out in the report.
>
> . . . [T]he report's just entirely negative. His sister has stuck with him. She says "I'm going to give up next time." But she's had a lot of endurance to put up with him until now and try to help him and still be supportive. A lot of people just have to close the door sometime. . . .
>
> . . . .
>
> . . . .
>
> The hope is that he's doing better. There are certain indications of that. But, on the other hand, the Court and the judge is–under the law, is required to balance favorable factors, unfavorable factors. . . .
>
> And I've sat here and thought about this. Even with his bad record–terrible record, not just a bad record–the Court's of the opinion he just has too much baggage by way of prior convictions. . . I'm going to deny probation or other alternative sentencing, including community corrections.

The Defendant's counsel contends that the trial court omitted from its consideration the Defendant's changed behavior and troubled past. We respectfully disagree. The trial court described the Defendant's criminal record as the factor that tipped the scales in favor of confinement. Defense counsel asserts, however, that the trial court's reference to the Defendant's criminal record revealed that the criminal record was the only factor the trial court considered. However, the trial court discussed the gravity of the criminal history only after noting the mitigating circumstances of the Defendant's troubled past and his present attempts to conform to the law. Therefore, in context, the trial court's focus on the Defendant's lengthy criminal history reflected a proper weighing of sentencing principles, mitigating circumstances, and rehabilitative potential. The trial court properly denied alternative sentencing based on its finding that the Defendant's long criminal history necessitated confinement.

While the trial court's finding that the Defendant's criminal history mandated confinement is sufficient to deny alternative sentencing, we also conclude that the trial court properly relied on the Defendant's past failure to comply with release conditions. The Defendant conceded that he had violated probation conditions at least five times. The trial court found that the Defendant's persistent criminal conduct, despite having been granted a number of alternative sentences, indicates that confinement is now necessary. We agree.

6

Here, the record affirmatively shows that the trial court gave due consideration and weight to the evidence presented at the plea hearing, the presentence report, the principles of sentencing, mitigating factors, and the Defendant's potential for rehabilitation. We conclude that the trial court's denial of an alternative sentence is presumptively correct. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and applicable authorities, we conclude that the trial court properly denied the Defendant alternative sentencing. We affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER